1 .THOMAS F. DALEY, Judge.
Defendant Empire Fire & Marine Insurance Company appeals a judgment against it. On appeal, Empire argues that the trial court committed legal error in allowing a direct cause of action against it, arguing they issued an indemnity policy to Mr. Fabre, not a liability policy. They also argue that the trial court committed legal error in allowing recovery against an indemnity policy after the indemnitee had been released. Third, they argue that the damages are excessive.
This matter arises out of a motor vehicle accident that occurred on May 27, 1988. Plaintiff Charles Webre sued Timothy Fa-bre, driver of a vehicle that rear-ended plaintiffs vehicle, and his liability insurer, Champion Insurance Company (who was later replaced by LIGA), on May 26, 1989. On April 22, 1991, plaintiff filed an amended petition, alleging that appellant Empire was an excess insurer of Fabre. Prior to trial, Empire filed an exception of No Cause/No Right of Action, arguing that the policy issued to Fabre was one of indemnity, not liability. The trial |acourt granted the exception. Plaintiff appealed to this court, which reversed the judgment of the trial court, finding that the it was premature to determine if the policy issued by Empire was an indemnity policy.
On June 11, 1991, plaintiff settled with and released Fabre and LIGA. In the release, plaintiff released Fabre and LIGA, but specifically reserved his rights to any and all claims arising out of the litigation with Empire. Plaintiff dismissed Fabre and LIGA with prejudice on July 3, 1991.
This matter came for trial on August 1, 2000.[1] The trial court rendered judgment *1038 in favor of plaintiff and against Empire in the amount of $10,100.00. In its judgment, the trial court held, relying on Quinlan v. Liberty Bank & Trust Company, 575 So.2d 336 (La.1991), that the main difference between liability insurance and indemnity insurance is that under a liability contract, the insurer must make payment even though the insured has not suffered an actual loss, but in an indemnity contract, the insurer only indemnifies the insured after he has suffered an actual loss. After examining the Empire insurance contract at issue, the trial court concluded that it was sufficiently vague so as to constitute an excess liability policy under Louisiana law.
DIRECT ACTION
Citing Quinlan v. Liberty Bank and Trust Co, supra, Empire argues that because its policy is an indemnity policy, it cannot be sued in a direct action as per LSA-R.S. 22:655. Additionally, Empire argues that the trial court erred in allowing Lplaintiff to maintain a direct action against its policy when plaintiff had released the tortfeasor and his primary liability insurer prior to trial.[2]
Plaintiff Webre also relies on Quinlan, arguing that the Court held that the Direct Action statute applies to “any insurance against the liability of the insured for the personal injury or corporeal property damage to a tort victim, regardless of whether the policy is framed in Lability or indemnity terms ...” Quinlan at 347 (emphasis added.) Thus, he argues that the Direct Action statute applies to the Empire policy regardless of whether it is framed in liability or indemnity terms.
In Quinlan, the issue was whether the plaintiffs, investors with the defendant bank, had a right of direct action against the defendant, St. Paul Insurance Company, in connection with a “Directors’ and Officers’ Liability Policy” issued by St. Paul to the defendant bank. The Court found that because the plaintiffs did not seek to recover damages for personal injury or corporeal property damage, their ability to bring a direct action depended on whether the policy was a liability policy or an indemnity contract. In Quinlan, the Supreme Court outlined the history and public policies behind the Louisiana Direct Action statute. The principal object of the statute, it found, was to overcome stratagems by insurers to bar tort victims’ direct suits to recover for personal injuries and corporeal property damage resulting from automobile collisions and other kinds of harmful impacts. The Direct Action statute is a mandate for tort victims to bring a direct suit to recover damages for personal injury or corporeal property damage from the tortfeasor’s insurer, regardless of whether the insurer has framed the policy as a liability or an indemnity contract. The Iscourt was careful to note that the statute did not prohibit indemnity contracts in situations not involving personal injury or damage to corporeal property.
The trial court, in the instant case, found that the Empire policy was “sufficiently vague so as to constitute an excess liability policy under Louisiana law,” though it did not identify the specific wording or provisions of the policy that led it to this conclusion. Under the Quinlan case, however, the policy’s wording, ambiguous or not, is irrelevant, because its purpose is to compensate automobile accident victims for *1039 personal bodily injury or corporeal damages. Quinlan states unequivocally that:
“... the Direct Action Statute is a mandate for a tort victim to bring a direct suit to recover damages for personal injury or corporeal property damage from the tortfeasor’s insurer, regardless of whether the insurer has framed the policy as a liability or an indemnity contract. It would lead to absurd consequences to interpret the statute as permitting an insurer to insulate itself from such an action by framing its policy as an indemnity contract or by inserting a “no action” clause in its policy.”
Therefore, because the Empire policy, though an excess policy, insures Mr. Fabre for his liability in an automobile accident, the policy’s wording as an indemnity or liability policy is irrelevant; under Quinlan, the victim may maintain a direct action against the policy. We find that the trial court did not err in allowing the plaintiff to maintain a direct action against the Empire policy. Likewise, the release of the tortfeasor Fabre, the insured under the policy, did not defeat plaintiffs right to maintain the direct action, where the plaintiff reserved his right in the release to proceed against Empire.
DAMAGES
Empire argues, in the alternative, that the damage award of $10,100.00 to plaintiff Webre is excessive for what it argues is a one-month soft tissue injury. [ ^Empire argues that plaintiffs damages were primarily caused by a second automobile accident that plaintiff sustained approximately one month after this accident. Empire argues that “almost all” of plaintiffs treatment followed the second accident, which spun his car around.
Webre answered this appeal and argues that the damage award was inadequate, and that it should be raised. Plaintiff also argues that the trial court was under the “mistaken impression” that it could only award the plaintiff the difference between $20,000.00, which at the time of this suit’s filing was the maximum jurisdictional amount[3] to waive a jury trial, and $9,900.00, which is the amount plaintiff settled for under the primary (Champion) liability policy.
Regarding damages, the trial court stated in its Reasons for Judgment:
Finally, this Court must next address itself to the amount of damages which will fairly compensate plaintiff for the injuries he sustained. The Court places particular import on the testimony of plaintiff himself. Mr. Webber [sic], testified at trial that although he was involved in a subsequent accident on June 26, 1988, he sustained no personal injuries. Mr. Webber [sic] further testified that following the accident for which he is presently before the Court his car was totaled and suffered injuries to his back.
Mr. Webber [sic] has no claim for lost wages because he used his sick leave for any time he missed from work. Additionally, Webber [sic] testified that he continued to work in pain. After any lifting he would experience severe pain in his back the following day. Likewise, Mr. Webber’s [sic] leisure time activities were limited. He could not play golf without experiencing pain in his back.
Based upon the above and foregoing it is the opinion of this Court that plaintiff, Charles Webber [sic], Jr., be awarded the sum of $10,100.00 to compensate him *1040 for the injuries he sustained as a result of this accident.
It is noted that this record is missing the transcript of the trial. The court reporter notified the trial court that despite a diligent search, she was unable to locate |7the tapes of this trial, and that no transcript would be forthcoming. The only evidence contained in this record pertaining to damages is the trial exhibits, which consist of medical bills and the treatment notes of Dr. Mark Juneau. The record contains no depositions or other direct testimony of the plaintiff or any treating physician.
Because no transcript is available for this trial, we are unable to review the complete basis for the judge’s damage award. In particular we are handicapped by the absence of the plaintiffs testimony, upon which the judge placed “particular import” in determining the amount of the damage award. There is no support in the record to substantiate plaintiffs claim that the judge’s damage award was based upon a mistaken impression of how much the judge could award plaintiff. While the record does contain the trial exhibits consisting of medical bills and some diagnostic and treatment notes of physicians, these do not provide this court with a sufficient basis to determine that the trial judge abused his vast discretion in determining an appropriate damage award. Accordingly, we must affirm the damage award.
The judgment of the trial court is affirmed. All costs of this appeal are taxed to defendant Empire Insurance Company.
AFFIRMED.

. Appellant informed this court in brief that though witnesses testified and a trial tran *1038 script was made, the transcript has been lost and is unavailable on appeal.

. This court notes that the Empire policy is not the primary liability policy. Under Louisiana law, specifically LSA-R.S. 32:861 and R.S. 32:900, Fabre’s legal duty to carry liability insurance on his motor vehicle was fulfilled by the Champion policy.

. The original petition was filed in 1989. Empire was added in 1991. See Historical and Statutory Notes to LSA-C.C.P. art. 1732.